IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWYERS FUNDING GROUP, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-6369 |
| | : | |
| ALAN HARRIS, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                    **January 20, 2016**

California Attorney Alan Harris and his law firm, Harris & Ruble, PA[1] (collectively, the Harris Defendants), seek dismissal of this action—in which Lawyers Funding Group, LLC (LFG) sues them for professional negligence and vicarious liability—for lack of personal jurisdiction and/or improper venue under Federal Rule of Civil Procedure 12(b)(2) and (3). Alternatively, the Harris Defendants ask the Court to transfer this action to the United States District Court for the Central District of California, where a parallel action filed by LFG against the same Defendants is pending. As discussed in greater detail below, venue is only proper in this judicial district as to the Harris Defendants if they are bound by the forum selection clause in a funding agreement between LFG and Ernest Straughter, another Defendant in this case. Because the Court concludes the Harris Defendants are not bound by the forum selection clause, the Court finds venue is improper in this District. Rather than dismiss the case, however, the Court will transfer the case to the Central District of California.

---

[1] According to the affidavit Harris submitted in support of his motion to dismiss, Harris & Ruble, PA does not exist; rather, Harris does business as Harris & Ruble, a sole proprietorship. Harris Aff. ¶ 2.

**FACTS**[2]

LFG, a Pennsylvania LLC with its principal place of business in Philadelphia, provides cash advances to plaintiffs with pending litigation in exchange for an interest in the plaintiffs' recovery.  In September 2011, LFG entered into a Purchase and Assignment Agreement (Purchase Agreement) with Straughter, a California resident, in connection with a 2008 copyright infringement action Straughter had filed against Sony Entertainment and recording artist Usher Raymond IV in the Central District of California.  Under the Purchase Agreement, as amended in December 2011, LFG advanced a total of $27,500 to Straughter in exchange for a $100,000 interest in the proceeds of the copyright action, in which Straughter sought more than $10 million.

As part of the Purchase Agreement, Straughter executed a "Notice of Irrevocable Assignment" authorizing his attorney in the copyright action, Alan Dowling, Esquire, to pay the full amount owed by Straughter to LFG out of the proceeds recovered in the suit.  Dowling, as Straughter's counsel, signed an "Attorney Acknowledgement of Lien," required under the Purchase Agreement, acknowledging receipt of the Notice signed by Straughter and agreeing, inter alia, to withhold and pay LFG the promised amount and to notify LFG in the event Straughter discharged him, leaving LFG's interest in the proceeds unprotected.

The Purchase Agreement includes choice of law and forum selection clauses which provide for the application of Pennsylvania law and a Philadelphia County forum, respectively. As to choice of law, the Agreement provides it is to be "governed by and construed under the

---

[2] Except where otherwise specifically noted, the following facts are drawn from LFG's Complaint and the exhibits thereto.  *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (noting on a motion under Rule 12(b)(3), "[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits" (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352, at 324 (3d ed. 2004))).

laws of the Commonwealth of Pennsylvania." Compl. Ex. A, at ¶ 10(c). As to forum, the Agreement contains two separate clauses, one providing "[a]ny dispute relating to the transactions contemplated by this Agreement that can not be resolved by the parties shall be commenced in a court of competent jurisdiction in Philadelphia County, Pennsylvania," *id.* Ex. A, at ¶ 10(d) (emphasis omitted), and the other providing "[a]ny disputes between Buyer [i.e., LFG] and any party other than Seller [i.e., Straughter], or between the parties to this Agreement to the extent not subject to section 10(d) above, shall be commenced in a court of competent jurisdiction in Philadelphia County, Pennsylvania," *id.* Ex. A, at ¶ 10(e) (emphasis omitted).

In December 2012, Dowling notified LFG he believed the copyright action would settle in mediation for $500,000, and requested that LFG reduce its share of the proceeds from $100,000 to $85,000, in the event the case settled for the expected amount. Although LFG agreed to the reduction, Straughter rejected the proposed settlement.

The following month, Dowling notified LFG that Straughter had discharged him as counsel and Dowling therefore would "no longer be able to protect the interest of [LFG]." Compl. ¶ 13 & Ex. C. The defendants in the copyright action thereafter filed a motion to enforce the $500,000 settlement they claimed Dowling had accepted on Straughter's behalf, which the district court granted on April 16, 2013.

The next week, on April 24, 2013, Ken Rubin of LFG emailed Harris, a California attorney, about the Straughter matter, indicating LFG "would like to retain your [i.e., Harris's] services to protect and collect our $100,000 interest in the settlement funds."[3] Compl. Ex. D

---

[3] LFG had a preexisting relationship with Harris and his law firm, who had borrowed money from LFG on several occasions between 2010 and 2012. *See* LFG's Opp'n 15 & Ex. A. Harris is licensed to practice in California and Illinois, but he currently maintains a law office in California only. Harris Aff. ¶ 3. Although Harris appeared pro hac vice on behalf of the Commonwealth of Pennsylvania in several cases in the 1970s, 1980s, and 1990s, he has not provided services for the Commonwealth—and has not been in Pennsylvania at all—since the

(ECF No. 1-1, at 28).  The email, which referenced an earlier conversation between Harris and Alan Zibelman, LFG's managing member, included the text or summaries of LFG's communications with Dowling and/or Straughter's assistant about the settlement of the copyright action and also attached copies of the Purchase Agreement and the amendment thereto.

In May 2013, Straughter, proceeding pro se, appealed the district court's ruling on the motion to enforce the settlement to the Ninth Circuit.

On June 5, 2013, while Straughter's appeal was pending, Zibelman, who is also an attorney, sent Harris an email reporting LFG had spoken with Straughter "and come to an amicable solution for which we do need your [i.e., Harris's] help."  Compl. Ex. D (ECF No. 1-1, at 30).  Specifically, Zibelman stated he and Straughter had agreed LFG would advance Straughter an additional $5,000 at no additional cost "in exchange for his [i.e., Straughter's] consent to enter judgment against him," with the understanding LFG would not execute on the judgment unless and until there was an unfavorable result in Straughter's appeal.  *Id.*  According to Zibelman, he "told [Straughter] that [Straughter] had to have his counsel review the document and sign off as his legal representative."  *Id.*  Zibelman further advised Harris that LFG "would also consider an arrangement to advance money to [Straughter] which he would use to pay your [i.e., Harris's] firm to do the appeal on his behalf so long as he agrees to waive any potential conflict that you may communicate with me providing status and copies of documents."[4]  *Id.*  Zibelman instructed Harris to "take some time to consider the best approach," noting LFG would be "paying you [i.e., Harris] after we send him [i.e., Straughter] the document."  *Id.*

---

late 1990s.  *Id.*  According to his affidavit, Harris has no place of business, property, mailing address, bank account, telephone listing, or corporate status in Pennsylvania, and has never specifically advertised in Pennsylvania.  *Id.* ¶¶ 8-12.

[4]  According to the Complaint, Harris at some point expressed an interest in representing Straughter in the copyright action.  Zibelman was amenable to such an arrangement as long as Harris would thereafter protect LFG's investment.  *See* Compl. ¶ 20.

4

The following month, on July 12, 2013, Zibelman again emailed Harris, enclosing an email from Straughter's new attorney, Igbo Obioha, requesting that Zibelman forward "the document that you would like to have Mr. Straughter review and execute" so that Obioha could "assist [Straughter] in reviewing the document pertaining to his financing arrangement with you, to assist him, per his request."  Compl. Ex. D (ECF No. 1-1, at 31).  Zibelman reminded Harris of the proposal that LFG "give [Straughter] 5k at no charge as consideration for Consent for Entry of Judgment 97,500 with the condition that we do not execute against him personally so long as the action is pending except that we may serve a garnishment upon defense counsel so that we are protected as well as the liens filed of record from two prior attorneys."  *Id.*  Zibelman also represented that LFG would dissolve the garnishment if Straughter's appeal was successful and there was "new litigation counsel to acknowledge the lien and protect [LFG's] interest."  *Id.*  Zibelman then asked Harris to send him a bill in advance, if necessary, and to have an associate "draft an appropriate document," clarifying, "this is not a Confession of Judgment so we avoid the legal challenge—it is a[n] agreed upon Stipulation for Consent Judgment for which consideration is being paid."  *Id.*

On August 8, 2013, Harris forwarded several legal documents to Zibelman, including a document captioned "Confession of Judgment; Certificate of Debtor's Attorney; and [Proposed] Order Thereon" and two versions of a document captioned "Stipulation for Consent Judgment."  Compl. ¶ 22 & Ex. E.  According to the Complaint, Harris prepared the documents after "numerous discussions and meetings with Mr. Straughter" at Harris's law offices in California.  *Id.* ¶ 22.  In all three documents, Straughter acknowledges his indebtedness to LFG in the amount

of $102,500:  $97,500 arising from Straughter's default on LFG's 2011 loan and $5,000 in consideration for the confession of judgment/consent judgment.[5]

After receiving the documents, LFG paid Straughter the $5,000 in additional consideration in two $2,500 installments, one on August 16, 2013, and the other on October 11, 2013.

On October 9, 2013, Zibelman emailed the version of the Consent Judgment he had executed to Harris, instructing Harris to "let me know if you need same notarized or need the original for filing with the Court" and noting he wanted "to make certain that our judgment is recorded so that it will be ready to be served on any garnishees at the appropriate time."  Compl. Ex. F.  Zibelman also instructed Harris to advise him "what costs or fees are owed and I will sen[d] immediately."  *Id.*  Zibelman thereafter sent Harris email reminders to file the Consent Judgment on October 29, 2013, November 5, 2013, and November 21, 2013, but Harris failed to do so.  Zibelman also emailed Harris about the Consent Judgment on January 8, 2014, expressing concern that he still had not seen a filed judgment.  Zibelman again emailed Harris on February 5, 2014, stating Harris's failure to file the Consent Judgment or to return any of Zibelman's calls since December 24, 2013, constituted attorney neglect.  LFG alleges Harris did not file the

---

[5] All three documents bear the case caption *Lawyers Funding Group, LLC v. Ernest Straughter, individually, and Does 1 to 5,* for a case to be filed in the California Superior Court, County of Los Angeles, and identify Harris and Harris & Ruble as attorneys for the defendant (i.e., Straughter).  *See* Compl. Ex. E.  In addition, the Confession of Judgment documents include a Certificate of Debtor's Attorney, signed by Harris, which identifies Harris as an attorney "independently representing . . . Straughter."  *Id.* Ex. E (ECF No. 1-1, at 44).  LFG asserts the identification of Harris as Straughter's attorney is incorrect, as LFG hired Harris to represent *LFG* in protecting *its* interest in the copyright litigation proceeds.  *See* Compl. ¶ 22.  Harris denies ever representing LFG, and instead maintains LFG referred Straughter to him for possible representation in the copyright action but Straughter ultimately retained Harris & Ruble solely for the purpose of executing the Consent Judgment.  *See* Harris Aff. ¶¶ 4-7.

Consent Judgment because he was trying to persuade Straughter to retain him in the underlying copyright action.  *See* Compl. ¶ 32.

In March 2014, Straughter, proceeding pro se, settled the copyright action, receiving an unknown sum.  After learning of the settlement in April or May 2014, LFG contacted Harris, who requested some time to attempt to communicate with Straughter.

In November 2014, LFG filed the Complaint in this case, asserting a claim for breach of contract against Straughter, and asserting professional negligence and vicarious liability claims against Harris and Harris & Ruble, respectively.   In May 2015, having been unable to make service on any of the Defendants in this action and to ensure compliance with the statute of limitations, LFG filed a second, substantially similar action against Straughter, Harris, and Harris & Ruble in the Central District of California.  LFG eventually served the Harris Defendants in June 2015, and later the same month, the Harris Defendants filed the instant motion to dismiss the case, which LFG opposes.

**DISCUSSION**

The Harris Defendants ask the Court to dismiss this case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and/or for improper venue pursuant to Rule 12(b)(3).  In their reply brief, the Harris Defendants alternatively ask this Court to transfer the case to the Central District of California.  Harris Defs.' Reply 6.  LFG opposes the motion, arguing the Harris Defendants waived any challenge to personal jurisdiction or venue by engaging in conduct closely related to the Purchase Agreement between LFG and Straughter, which provides for a Philadelphia forum.  LFG also argues, even if the Harris Defendants are not bound by the forum selection clause in the Purchase Agreement, they are nevertheless subject to specific personal jurisdiction in Pennsylvania and venue is proper in this judicial district under

7

28 U.S.C. § 1391(b)(1).  LFG urges the Court to deny the Harris Defendants' motion or, alternatively, to transfer the case to the Central District of California for possible consolidation with the parallel action LFG previously filed there.  Because the venue issue is dispositive in this case, the Court will address that issue first.  *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (concluding a district court may consider the question of venue in advance of personal jurisdiction "when there is a sound prudential justification for doing so").

Under 28 U.S.C. § 1391, the general federal venue statute, a plaintiff may bring a civil action in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); *see Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W.D. of Tex.*, 134 S. Ct. 568, 577 (2013) (noting the question whether venue is improper "is generally governed by 28 U.S.C. § 1391").  "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)."  *Atl. Marine Constr. Co.*, 134 S. Ct. at 577.  Even if the case does not fall within one of these categories, venue may nevertheless be proper based on the defendant's consent where, for example, the defendant has agreed to be bound by a valid forum selection clause.  *See Lawyers Funding Grp. v. White*, No. 14-2962, 2015 WL 921588, at *7 (E.D. Pa. Mar. 4, 2015) ("[A] party's agreement to a forum selection clause constitutes a waiver of any opposition to improper venue.");  *SKF USA Inc. v. Okkerse*,

992 F. Supp. 2d 432, 443, 446 (E.D. Pa. 2014) (recognizing "a defendant may consent to personal jurisdiction and venue through execution of a valid forum selection clause").

LFG argues venue is proper in this district under § 1391(b)(1) because "at least one defendant, Mr. Straughter, indisputably subjected himself to venue in this Court" by executing the Purchase Agreement.  LFG's Opp'n 11.  The Court disagrees.  Section 1391(b)(1) permits a plaintiff to bring a civil action in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  Here, according to LFG's own Complaint, all three Defendants are residents of California, Compl. ¶¶ 3-5; hence, venue would be proper under § 1391(b)(1) only in that state.

Venue is also improper under § 1391(b)(2) as no "substantial part of the events or omissions" giving rise to LFG's claims against the Harris Defendants occurred in this district. To the contrary, virtually all of the acts and omissions alleged to constitute professional negligence by Harris occurred in the Central District of California, the district where Harris's law offices are located and the consent judgment Harris prepared was to be filed in state court. *See* Compl. ¶ 30 (alleging Harris was negligent in, inter alia, failing to (1) file and record the consent judgment, (2) serve garnishment upon defense counsel in the copyright action, (3) monitor the docket entries in the copyright action, (4) recognize and avoid potential conflicts of interest arising from his attempts to represent both LFG and Straughter, and (5) refer the LFG matter to other counsel to ensure the consent judgment was timely filed).  The only negligent conduct identified in the Complaint that could be regarded as having occurred in this district is Harris's failure "to definitively advise LFG that he would not be filing the [consent judgment]." *Id.* ¶ 30(c).  Even as to this allegation, however, the omission itself arguably occurred in California, where Harris failed to initiate communication with LFG.  *See Cottman Transmission*

*Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994) (holding a Michigan defendant's failure to return materials and remit payment to the plaintiff in Pennsylvania were omissions occurring in Michigan, even though the result of the omissions was the defendant's non-receipt of the materials and payment in Pennsylvania). In any event, this lone allegation is not sufficiently substantial to support venue in this district. *See id.* (holding venue was not proper in Pennsylvania in an action for trademark infringement and breach of a noncompete agreement where "most, if not all, of the significant events" occurred in Michigan, the state where the agreement was executed and performed and where the allegedly unauthorized use of the trademarks at issue occurred).

Section 1391(b)(3) also does not provide a basis for venue in this district. That provision applies only "if there is no district in which an action may otherwise be brought as provided in this section." As both LFG and the Harris Defendants implicitly acknowledge, venue would plainly be proper as to all three Defendants in this case in the Central District of California, where all Defendants reside and where LFG has already filed a parallel action. Section 1391(b)(3) is therefore inapplicable in this case.

Because this district is not an appropriate venue for LFG's claims against the Harris Defendants under § 1391(b), venue is only proper in this district if the Harris Defendants are bound by the forum selection clause in the Purchase Agreement between LFG and Straughter. In the Third Circuit, a non-signatory to an agreement may be bound by a forum selection clause contained therein where the non-signatory is a third party beneficiary of the agreement and the claims at issue arise from the non-signatory's third party beneficiary status.[6] *See Coastal Steel*

---

[6] LFG argues the issue whether the Harris Defendants are bound by the forum selection clause in the Purchase Agreement is governed by federal law, citing the Third Circuit's statement in *Jumara v. State Farm Insurance Co.* that "[i]n federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *See* LFG's

*Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *overruled on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989); *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195-97 (3d Cir. 2001) (interpreting and applying *Coastal Steel* in the context of an arbitration clause).  A non-signatory may also be bound by a forum selection clause where the non-signatory is "closely related" to the contractual relationship.  *See White*, 2015 WL 921588, at *4; *Synthes, Inc. v. Emerge Med., Inc.*, 887 F. Supp. 2d 598, 607 (E.D. Pa. 2012).

LFG does not argue the Harris Defendants are bound by the forum selection clause in the Purchase Agreement as third party beneficiaries of that Agreement.  Nor is there any basis to conclude these Defendants—lawyers allegedly hired by LFG to enforce LFG's rights under the Purchase Agreement some two years after it was entered—have the status of third party beneficiaries.  *See Scarpitti v. Weborg*, 609 A.2d 147, 149-51 (Pa. 1992) (holding a nonparty is a third party beneficiary of a contract under Pennsylvania law only where (1) "both parties to the contract express an intention to benefit the third party in the contract itself," or (2) recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and either "the

---

Opp'n 7 (quoting *Jumara*, 55 F.3d 873, 877 (3d Cir. 1995)).  The Harris Defendants do not dispute this assertion, and the Court will therefore assume the issue is governed by federal law. *But cf. Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218-20 (2015) (analyzing whether non-signatories to an agreement were bound by the agreement's forum selection clause under Delaware law in a diversity removal action).  Even if state law were applicable, there is no reason to believe the result would be any different in this case.  Under Pennsylvania law, as under federal law, a non-signatory may be bound by a forum selection clause where the non-signatory is a third party beneficiary of the contract.  *See Kelly v. Bear, Stearns & Co.*, No. 080832, 2001 WL 1807360, at *2-3 (Pa. Ct. Com. Pl. Dec. 18, 2001); *cf. Johnson v. Pa. Nat'l Ins. Cos.*, 594 A.2d 296, 299 (Pa. 1991) (holding a plaintiff seeking uninsured motorist benefits under a policy to which she was not a signatory was bound by an arbitration clause in the policy she sought to enforce as she was a third party beneficiary under the policy and her rights were therefore "vulnerable to the same limitations which may be asserted between the promisor and the promisee" (quoting *Jewelcor Jewelers & Distribs., Inc. v. Corr*, 542 A.2d 72, 80 (Pa. Super. Ct. 1988))).  It is not clear under what, if any, additional circumstances a non-signatory may be bound.

performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary[] or . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance" (citations omitted)).

Instead, LFG argues the forum selection clause applies to the Harris Defendants because their conduct is "directly and closely related to the contractual relationship between Mr. Straughter and LFG." LFG's Opp'n 9. To determine whether a third party's conduct is sufficiently closely related to a contractual relationship to bind the party to a forum selection clause to which it is not a signatory, district courts within the Third Circuit have employed a "common sense, totality of the circumstances approach," inquiring whether it is fair and reasonable to bind the nonparty in light of all the circumstances, including "whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute." *Synthes, Inc.*, 887 F. Supp. 2d at 607 (citation and internal quotation marks omitted); *see also, e.g.*, *White*, 2015 WL 921588, at *4. Applying this approach, district courts in this Circuit have enforced forum selection clauses against non-signatories in a variety of situations, including in the context of litigation funding agreements similar to the Purchase Agreement in this case.

In *Cambridge Management Group, LLC v. Baker*, No. 21-3577, 2013 WL 1314734 (D.N.J. Mar. 28, 2013), the case on which LFG principally relies, for example, a litigation funding group entered into an agreement with two personal injury claimants whereby the funding group provided the claimants a cash advance in exchange for an interest in the potential proceeds of the personal injury action. The funding agreement contained a choice of forum and law clause providing for arbitration of disputes under the agreement, at the funding company's election. As part of the transaction, the claimants also executed an irrevocable lien in favor of the funding

group specifying that their lawyers in the personal injury action—identified by name in the lien—were required to pay the amount owed by the claimants directly to the funding company out of the proceeds of the action.  *See id.* at *10.  Although the lawyers did not sign the funding agreement containing the choice of forum and law clause, they signed a separate "Attorney Acknowledgement," in which they acknowledged receipt of the funding agreement and lien, agreed to distribute the proceeds of the personal injury action in accordance with those documents, and agreed not to distribute any of the proceeds to the claimants until the funding group's lien was satisfied.  *See id.* at *9-11.  The funding agreement identified the Attorney Acknowledgement as one of the documents that collectively constituted the agreement between the parties.  *Id.* at *10.

After the personal injury action settled, the funding group sued the personal injury claimants and their lawyers in New Jersey, alleging the lawyers had paid all or a portion of the settlement proceeds to the claimants without paying the funding company in accordance with the various agreements between the parties, and seeking to compel both the claimants and their attorneys to arbitrate the dispute pursuant to the choice of forum and law clause in the funding agreement.  The lawyers moved to dismiss the case, arguing they were not subject to personal jurisdiction in New Jersey and could not be compelled to arbitrate the dispute because they were not parties to the funding agreement.  The district court denied the motion, holding the fact the lawyers did not sign the funding agreement itself "d[id] not render the choice of law and forum clause contained [therein] unenforceable against them."  *Id.* at *11.  Rather, given the "interdependent nature" of the relevant agreements—the funding agreement, the lien, and the Attorney Acknowledgement—and given that the funding transaction between the funding company and the claimant "unequivocally required direct involvement by the [lawyers] to ensure

13

payment of [the funding company's] interest in the underlying [personal injury] action," the court found the lawyers' conduct was "closely and directly related to the contractual relationship between the [claimants] and the [funding company]," and the choice of forum and law clause in the funding agreement was therefore applicable to the lawyers. *Id.*

Likewise, in *Lawyers Funding Group, LLC v. White*, a suit brought by LFG against a civil rights claimant and his attorneys in the civil rights action to recover monies allegedly owed to LFG under a purchase agreement similar to the one at issue in this case, the district court held the claimant's lawyers were bound by the forum selection clause in the purchase agreement even though they had not signed the agreement. *See* 2015 WL 921588, at *6. As in *Cambridge*, the court found the lawyers had a "close and direct relationship" with the purchase agreement that justified subjecting them to the forum selection clause contained therein, where the purchase agreement imposed certain duties on the lawyers, which they expressly agreed to perform by executing attorney acknowledgements specifically referencing the purchase agreement. *See id.*

LFG argues that, as in *Cambridge* and *White*, "the conduct of the Harris Defendants in agreeing to protect the rights of . . . LFG is so 'closely related' to the Purchase Agreement that the Pennsylvania forum selection clause [in that Agreement] is applicable." LFG's Opp'n 11. The Court disagrees. Unlike the lawyers in *Cambridge* and *White*, the Harris Defendants were not part of the funding transaction between Straughter and LFG. Rather, Dowling represented Straughter in that transaction, and it was Dowling who took on obligations under the Purchase Agreement, agreeing in the Attorney Acknowledgement to pay LFG the amount owed by Straughter under the Purchase Agreement. While it may be foreseeable that an attorney in Dowling's position would be bound by the forum selection clause in the Purchase Agreement in disputes arising out of that Agreement, the same is not true as to the Harris Defendants.

14

Although LFG ultimately retained the Harris Defendants to protect its rights under the Purchase Agreement, by LFG's account, that representation was to entail preparing and filing a consent judgment and garnishing the litigation proceeds.  Unlike Dowling, the Harris Defendants did not sign an Attorney Acknowledgement of Lien, nor did they otherwise take on any obligations under the Purchase Agreement.  While LFG's claims against the Harris Defendants relate to the Purchase Agreement, in that LFG alleges the Harris Defendants were negligent with respect to their undertaking to protect LFG's rights under the Agreement, the claims do not arise out of the Agreement or the underlying funding transaction, but out of obligations the Harris Defendants owed LFG by virtue of a later-formed attorney-client relationship between the parties.  In these circumstances, the Court concludes the Harris Defendants were not sufficiently closely related to the Purchase Agreement to be bound by the forum selection clause therein.

Because this case does not fall within any of the three subsections of § 1391(b), and because the Harris Defendants cannot be deemed to have waived their venue challenge by virtue of the engagement they undertook for LFG, venue is not proper in this district.  Under 28 U.S.C. § 1406(a), the Court has discretion to "dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."  In its opposition, LFG requests that, in the event the Court grants the Harris Defendants' motion, the case be transferred to the United States District Court for the Central District of California, where the later-filed parallel action is already pending.  The Harris Defendants do not oppose transfer, and the Court agrees transfer is the preferable remedy in this case.  *See Bockman*, 459 F. App'x at 162 n.11 ("Transfer in lieu of dismissal is generally appropriate to avoid penalizing plaintiffs by 'time-consuming and justice-defeating technicalities.'" (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962))).

Because venue is not proper in this district, the Harris Defendants' motion to dismiss pursuant to Rule 12(b)(3) will be granted in part.  In lieu of dismissal, however, the Court will transfer the case to the Central District of California where the related action, *Lawyers Funding Group, LLC v. Harris, et al.*, Civil No. 15-4059 MMM (C.D. Cal. filed May 29, 2015), is pending.

An appropriate order follows.

BY THE COURT:


    /s/ Juan R. Sánchez
Juan R. Sánchez, J.